RICHARD W. PAYNE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Payne v. Commissioner
Docket No. 6110-75.
United States Tax Court
T.C. Memo 1979-442; 1979 Tax Ct. Memo LEXIS 82; 39 T.C.M. (CCH) 435; T.C.M. (RIA) 79442; November 6, 1979, Filed Richard W. Payne, pro se. Norman A. Lofgren, for the *83 respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1965
$21,007.77
$10,503.88
1966
9,984.35
4,992.17
1967
5,028.64
2,514.32
In an amendment to the answer to the amended petition, filed by a respondent on August 1, 1979, increased deficiencies and additions to tax were claimed by respondent pursuant to section 6214(a), as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1965 $ 41.72
$ 20.87
1966
50.70
25.36
1967
1,221.50
610.75
The issues presented for decision are: 1. Whether petitioner received unreported taxable income for the years 1965 through 1967 from the sale of stolen merchandise. 2. Whether petitioner is entitled to deduct beauty shop expenses, repossession losses and rental property losses in the years 1965 and 1967. 3. Whether petitioner *84 is entitled to deduct $3,210.35 of a rent and royalty loss claimed on his Federal income tax return for 1966. 4. Whether a portion of the investment tax credit for 1966 allowed to petitioner which was attributable to the use of a 1967 Ford station wagon was subject to recapture in 1967. 5. Whether any pary of the underpayment of income tax for each of the years 1965 through 1967 was due to petitioner's fraud with intent to evade tax. FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts, first supplemental stipulation and second supplemental stipulation, together with the exhibits attached thereto, are incorporated herein by this reference. Richard W. Payne (petitioner) was a legal resident of Texarkana, Texas, when he filed his petition in this case.
Petitioner was married to Evelyn Libby Hall on June 2, 1964. They were divorced on June 5, 1967. They filed joint Federal income tax returns for the years 1965 and 1966. Petitioner filed an individual income tax return for 1967. On March 17, 1975, petitioner was sent two statutory notices of deficiency, one covering the years 1965 and 1966 and the other covering the year 1967. Wesley Rader *85 prepared the 1965 and 1966 Federal income tax returns of petitioner and Evelyn L. Payne. Petitioner had a single entry system set of books on his real estate operation and no other formal books and records. He orally furnished Rader income and expense figures pertaining to a wholesale drug operation. Rader went over the income tax returns with petitioner and told him that it was his responsibility to report all of his income. Petitioner told Rader that he had reported all of his income and expenses and had reported his tax liability correctly. Charles E. Gross prepared the 1967 individual income tax return in petitioner's name. The return was prepared by Gross from information furnished to him by petitioner. He furnished Gross a ledger book that showed his rental income and expense and from which Gross prepared the rental income and expense. The figures shown on the tax return in relation to the rental business are consistent with petitioner's books and records. The income figure on the tax return pertaining to a drug and beauty supplies business was furnished orally to Gross. Petitioner did not report any gross receipts of income with respect to the sales made by his *86 partnership with Lester Ray and Wanda Jo Henderson on his joint income tax return for the year 1965. In 1964 the petitioner was a hairdresser. He lived in a rented apartment. He did not have a savings account. He owned an old Chevrolet automobile. He owned no rental property and no oil investments. Petitioner received no inheritances in the years 1964 through 1967.He received no gifts over $100 in those years. His wife did not own an automobile nor have a savings account. In 1965 the petitioner acquired two rental homes, a panel truck and a new station wagon. In 1966 he acquired a third rental house, an oil and gas investment interest and a new truck. In 1966 he and his wife vacationed in Las Vegas with the Hendersons. In 1967 he acquired a new Cadillac. In 1965, petitioner entered into a business arrangement with Wanda Jo Henderson and Lester Ray Henderson, who is also known as Ary Henderson and Clinton Ray Pitman. During each of the years 1965, 1966 and 1967, petitioner was engaged in the business of selling stolen merchandise, drugs and beauty supplies to drug stores and other businesses in the Dallas, Texas, area. Persons selling stolen merchandise are commonly *87 known as fences. During each of the years 1965, 1966 and 1967, petitioners' business of selling stolen merchandise, drug and beauty supplies was conducted as a partnership or joint venture with the Hendersons. This partnership is referred to herein as Payne-Henderson. Petitioner and Mr. Henderson conducted their business of selling stolen merchandise under various names, including Diversified Enterprises, Ray Henderson, R & R Enterprises, R & R Supply, R & R Supply Co., and Richard Payne. The initials "R & R" used in connection with those names is an abbreviation for Richard Payne and Ray Henderson. Partnership information returns (Form 1065) were not filed on behalf of the partnership or joint venture composed of petitioner, Lester Ray Henderson and Wanda Jo Henderson for the taxable years 1965, 1966 and 1967. During the years 1965, 1966 and 1967, petitioner was self-employed. Petitioner has also been known by the following names: Richard Kenner, Richard Taylor, and Richard Green. Proceeds from sales made by Payne-Henderson were divided 50 percent to petitioner and 50 percent to Lester Ray Henderson and Wanda Jo Henderson. The stolen merchandise which Payne-Henderson *88 sold was generally acquired from shoplifters, thieves and drug addicts. The Payne-Henderson operation was a large-scale fencing operation. Payne-Henderson had between six and ten thieves working for it. Stolen merchandise was stored by Payne-Henderson in the homes and garages of petitioner and Lester Ray Henderson, in the trunk of an automobile, in a van, and in one or more warehouses. In 1965, Payne-Henderson received proceeds from sales to the following businesses as set forth below: Purchaser
Total Sales
Park Pharmacies, Inc.
$ 2,274.02
Gilley's Pharmacy
1,904.67
Jamison's Pharmacy
971.49
Page's Rexall Drug
3,974.63
Town East Pharmacy
615.81
Lockwood Pharmacy
2,424.90
Key Rexall - Webb Royal
718.36
Key Rexall - Big Town
4,203.01
Cox - Moore Drug
92.46
Orchard Hill Pharmacy
1,031.23
TOTAL
$18,210.58
In 1966, Payne-Henderson received proceeds from sales to the following businesses as set forth below: Purchaser
Total Sales
Park Pharmacies, Inc.
$ 4,936.99
Gilley's Pharmacy
926.32
Town East Pharmacy
2,430.19
Lochwood Pharmacy
3,403.58
Key Rexall - Big Town
2,766.28
Orchard Hill Pharmacy
1,564.83
Myatt's Village Pharmacy
926.56
TOTAL
$16,954.75
*89 Proceeds from the sales set forth above were divided 50 percent to petitioner and 50 percent to Lester Ray Henderson and Wanda Jo Henderson. Payne-Henderson received $1,652.57 in 1965 and $1,643.39 in 1966 from the sales of stolen merchandise to Elain's Drugs. In 1967, Payne-Henderson received the following amounts from sales of stolen merchandise to the below named purchasers: 1967
Purchaser
Amount
Park Pharmacies, Inc.
$1,330.00
Town East Pharmacy
2,928.02
Lochwood Pharmacy
3,048.51
Orchard Hill Pharmacy
193.82
TOTAL
$7,500.35
Payne-Henderson received the following amounts from sales of stolen merchandise to the purchasers set forth below: 1965
Purchaser
Amount
Dacus Glendale
$268.46
VIP Coffee Shop
55.00
Dacus #2
328.90
TOTAL
$652.36
1966
Purchaser
Amount
VIP Coffee Shop $ 216.00
Dacus #2
101.39
Jim Dean Pharmacy
3,438.75
White Rock Pharmacy
44.25
Sobel
250.00
City Salvage
984.25
Allens
50.96
City Surplus
84.53
Gibsons Discount Stores
560.56
Unidentified
564.12
TOTAL
$6,294.81
1967
Purchaser
Amount
Gibsons Discount Stores
$1,097.72
Doiggs' Lemon Avenue
Pharmacy
1,025.03
Dacus
2,863.02
Sobel
533.00
United Wholesale
609.94
Jordan's
225.85
Bejourak
85.80
TOTAL
$6,440.36
*90 Payne-Henderson received the following amounts from the sales of stolen merchandise to the purchasers set forth below: 1965
Purchaser
Amount
Country Club Pharmacy $ 757.35
Westview Drugs
2,210.17
Beverly Hills Pharmacy
2,366.61
TOTAL
$5,334.13
1966
Purchaser
Amount
Country Club Pharmacy
$2,855.81
Westview Drugs
1,678.19
Beverly Hills Pharmacy
5,023.54
TOTAL
$9,557.54
1967
Purchaser
Amount
Country Club Pharmacy $ 716.66
Beverly Hills Pharmacy
486.59
TOTAL
$1,203.25
Sun Rexall Drug of Dallas, Texas, has been operated by Sol Kaplan Since 1945. It consists of two stores which had gross sales of over $2,000,000 per year in each of the years 1965, 1966 and 1967. The regularly maintained business records of Sun Rexall drug show that it made purchases of sundry drug items and beauty supplies from Payne-Henderson in the following amounts: Year
Amount
1965
$84,018.86
1966
74,741.08
1967
43,699.99
Sun Rexall was not furnished invoices by Payne-Henderson for every sale. Invoices from sales to Sun Rexall by Payne-Henderson in 1965, 1966 and 1967 were compiled and organized by *91 Sol Kaplan in the ordinary course of business when the events of the sale were fresh in Mr. Kaplan's memory. The amounts of the sales by Payne-Henderson to Sun Rexall shown above were paid by Sun Rexall to Payne-Henderson in the year of the sales. Fences in the Dallas, Taxas, area during the years 1965, 1966 and 1967, who purchased sundry drug items and beauty supplies from thieves for resale paid between 10 percent and 15 percent of the retail price of the various items. Large scale fences generally paid less than small fences. Merchandise sold by Payne-Henderson in 1965, 1966 and 1967 was sold at 50 percent of the retail price of the items to customers other than Sun Rexall Drug. Merchandise sold by Payne-Henderson in those years to Sun Rexall Drug was at prices varying between 33-1/3 percent and 50 percent of the item's retail price. The mean selling price was 41.67 percent of retail. Petitioner and Lester Ray Henderson held themselves out to business contacts as partners during each of the years 1965, 1966 and 1967. They also held themselves out to their spouses as partners in each of the years 1965, 1966 and 1967. Petitioner and Lester Ray Henderson instructed *92 their customers as to whom to make the checks for purchases payable, and such checks were made payable to all names under which Payne-Henderson operated. Petitioner and Lester Ray Henderson, by agreement, signed each other's names in endorsing checks received for sales of stolen merchandise. The 1966 ending inventories shown on the Schedule C of Petitioner's 1966 income tax return and Lester Ray Henderson's 1966 income tax return are identical. Petitioner furnished to customers purchasing stolen merchandise scraps of paper in lieu of normal business receipts. The vast majority of all sales made by petitioner and his partner resulted in either of them being paid in currency or by check, the check being immediately negotiated for currency at some place other than a banking institution. Petitioner is the same person who was indicted by the United States Grand Jury for the Northern District of Texas on December 31, 1971, in the criminal case of United States of America v. Richard William Payne, No. CR-3-2534, for violating I.R.C. section 7206(1) with respect to his 1965, 1966 and 1967 income tax returns. The indictment charged, in part, that *93 petitioner's 1966 Federal income tax return reflected gross receipts of $18,568.98 and net profit of $4,620.16 from the drug and beauty supplies business, whereas, he then and there well knew and believed that he had gross receipts of $50,925.05 and net profit of $36,976.23 from the drug and beauty supplies business. The indictment further charged, in part, that petitioner's 1967 income tax return reflected gross receipts of $8,538.35 and net profit of $2,069.66 from the drug and beauty supplies business, when he knew and believed that he had total gross receipts of $34,807.54 and net profit of $28,338,85 from the drug and beauty supplies business. After entering a plea of not guilty, petitioner was convicted in criminal case CR-3-2534 in the United States District Court for the Northern District of Texas, Dallas Division, on September 7, 1972, of violating I.R.S.section 7206(1) in that he knowingly and willfully subscribed to his 1966 and 1967 income tax returns which returns he knew were false as charged in the grand jury's indictment. Petitioner's conviction in criminal case CR-3-2534 was affirmed by the United States Court of Appeals for the Fifth Circuit on April 13, 1973. *94 The conviction is final. Petitioner is the same person who was indicted by the United States Grand Jury for the Northern District of Texas on May 30, 1972, in the criminal case of United States of America v. Richard William Payne, CR-3-2752, for nine counts of mail fraud in violation of 18 U.S.C. sec. 1341. After entering a plea of not guilty, petitioner was convicted in the United States District Court for the Northern District of Texas in CR-3-2752 on all nine counts of the Grand Jury's indictment. His conviction in CR-3-2752 was affirmed by the United States Court of Appeals for the Fifth Circuit on September 23, 1975. The conviction is final. Petitioner presented no documentary evidence at the trial of this case to support his allegation that respondent erred in the determination of the deficiencies for the years 1965, 1966 and 1967. The only documentary evidence presented which allegedly reflected Payne-Henderson's cost of goods sold consisted of forged and fraudulent receipts for the years 1966 and 1967, which receipts were created by petitioner and Lester Ray Henderson. These receipts bear no relationship to actual cost of goods sold. *95 Petitioner failed to present any credible documentary evidence to support any expenses for cost of goods sold in connection with his drug and beauty supplies business in the years 1965, 1966 and 1967. ULTIMATE FINDINGS OF FACT 1. Petitioner received income from the sale of stolen merchandise during the years in issue which was not reported on his 1965 Federal income tax return and which was substantially understated on his Federal income tax returns for 1966 and 1967. 2. Petitioner's share of the total Payne-Henderson partnership receipts in 1965 was $54,934.25, which amount was not reported on his tax return for that year. His share of Payne-Henderson partnership receipts in 1966 was $54,585.78, of which only $18,568.98 was reported on his tax return for that year. His share of Payne-Henderson partnership receipts in 1967 was $29,421.97, of which only $8,538.35 was reported on his tax return for that year. 3. Petitioner is not entitled to deduct claimed beauty shop expenses, repossession losses and rental losses and rental property losses in the years 1965 and 1967. 4. Petitioner is not entitled to deduct a rent and royalty loss claimed on his Federal income tax *96 return for 1966. 5. That portion of an investment tax credit allowed to petitioner in 1966 which was attributable to his 1967 Ford station wagon was subject to recapture in 1967. 6. Petitioner's income from the Payne-Henderson partnership was subject to the self-employment tax for the years in issue. 7. For the years 1965 through 1967 the petitioner failed to prove that he was entitled to deduct expenses for the cost of stolen merchandise in excess of the amounts claimed on his returns and previously allowed by respondent. 8. A part of the underpayment of income for each of the years 1965 through 1967 was due to petitioner's fraud with intent to evade tax. OPINION Issue 1. Understatements of Income Received from Sales of Stolen Merchandise. Beginning in 1965, petitioner entered into a business arrangement with Lester Ray Henderson and his wife, Wanda Jo Henderson. They were engaged in selling stolen sundry drug items, beauty supplies and small appliances to retail drug stores in the Dallas, Texas, area. Persons engaged in this type of business are commonly known as "fences." The business, conducted as a partnership or joint venture, operated under various *97 assumed names. Although no partnership information returns were filed for the years 1965 through 1967, proceeds from sales by Payne-Henderson were divided 50 percent to the petitioner and 50 percent to the Hendersons. The stolen merchandise which petitioner and his partners sold was generally acquired from shoplifters, thieves, and drug addicts who had stolen the items. The Payne-Henderson operation in 1965 through 1967 was known to local Dallas police as being a large scale operation. The merchandise was stored, pending sale, in the homes and garages of petitioner and the Hendersons, in the trunk of an automobile, in a van and in one or more warehouses. Moreover, Payne-Henderson had from six to ten thieves working for it. The gross sales from this operation were more than $275,000 for the three years before the Court. The sales are fully set out in our findings of facts. Some were established by stipulation and some by testimony. With respect to some of the sales the petitioner stipulated the authenticity of the customers' records verifying the purchases as well as the total purchases reflected by the records. Beyond the stipulated documentary evidence, each of the owners *98 of the pharmacies testified that the stipulated documentary evidence reflected purchases of merchandise by the pharmacies from the petitioner and his partners. The only sales receipts which are substantially disputed by petitioner are receipts from the sales made to Sun Rexall Drug, which was owned and operated by Sol Kaplan. It was stipulated that the business records of Sun Rexall showed that it made purchases of stolen sundry drug items from Payne-Henderson as follows: Year
Amount
1965
$84,018.86
1966
74,741.08
1967
43,699.99
Petitioner's argument centers around the theory that while the records of Sun Rexall reflect a certain purchase price, such purchase price was not the actual amount received by Payne-Henderson. Petitioner did not dispute the volume of sales, but only the amount of cash received from such sales. He contends that he and his partners would bargain with Mr. Kaplan and a lesser, but unknown, price was then agreed upon. This contention was categorically denied by Mr. Kaplan, a longtime businessman with an accounting degree, who had contemporaneous receipts and records maintained in the ordinary course of business. Moreover, since Sun *99 Rexall consists of two stores which grossed over $2 million in each of the years 1965, 1966 and 1967, it was obviously within the capability of Sun Rexall to make such volume of purchases. In addition, Lester Ray Henderson's testimony supports the volume of sales to Sun Rexall. Section 61 provides that gross income means all income from whatever source derived. Income from illicit activities, such as the sale of stolen merchandise, is unquestionably gross income. Schira v. Commissioner, 240 F.2d 672 (6th Cir. 1957). Accordingly, petitioner realized gross income from his operations as a fence. Once gross sales have been established, it is necessary to determine the cost of goods sold to arrive at profit for purposes of proving an underpayment. Testimony presented by respondent's expert witness established that a large scale fencing operation, such as that operated by petitioner and the Hendersons, would pay less than 15 percent of the retail price for items of the types sold *100 by Payne-Henderson. Petitioner adduced no evidence at trial to substantiate any cost of goods sold for the illicit merchandise which he and the Hendersons sold. The only documentary evidence showing alleged purchases by Payne-Henderson was admittedly forged and fraudulent invoices dealing with the years 1966 and 1967 created by petitioner and Lester Ray Henderson to deceive the Dallas police, which invoices bore no relationship to actual cost of goods sold. Furthermore, petitioner's unstated allusions that he was not making a substantial profit lack credence. Prior to embarking on his illegal business venture with the Henderson in 1965, petitioner was working as a hair dresser, living with his wife in a rented apartment, did not own realyth or oil investments, and did not possess a savings account. His wife did not own an automobile and he owned only an "old Chevrolet." Yet, during the year 1965 the petitioner acquired two rental homes, a panel truck and a new station wagon automobile. By the end of 1966, business was so good that he had purchased an interest in an oil and gas well, a third rental house and a new truck. And in 1967, petitioner purchased a new Cadillac automobile. *101 This meteoric increase in assets was accomplished on reported taxable income of slightly more than $1,300 for 1965 and negative taxable income for the years 1966 and 1967. Moreover, petitioner received no substantial gifts or inheritances in any of the years in question. This leads us to the inescapable conclusion that the petitioner was receiving substantial unreported profit from selling stolen merchandise. We think it is clear from the evidence that the petitioner and the Hendersons were equal partners, as defined in section 761(a). Not only did they hold themselves out to others as being partners, but also the testimony established that where customers were issuing checks for purchases from Payne-Henderson, either petitioner or Lester Ray Henderson instructed the customer as to whom to make the check payable. These checks were made payable to every neme under which petitioner and the Hendersons operated. Even petitioner conceded that he and the Hendersons operated as a "sometimes" partnership. Petitioner and Lester Ray Henderson both testified that they operated "in and out of a 50/50 partnership" in each of the years 1965 through 1967, but neither was able to define the *102 alleged periods or particular sales during which a partnership did not exist. The former spouses of petitioner and Lester Ray Henderson also testified that there was a 50/50 partnership in each of the years 1965 through 1967. Indeed, it has been stipulated that the receipts from many sales made in 1965 and 1966 were divided 50 percent to petitioner and 50 percent to the Hendersons. Another objective indicia of the partnership was the admitted arrangement whereby petitioner and Lester Ray Henderson would sign each others names on check endorsements to facilitate the negotiation of the checks. In addition, the 1966 ending inventories shown on Schedule C of the income tax returns of petitioner and Lester Ray Henderson for 1966 are identical. Therefore, we conclude that the Payne-Henderson operation, an organization clearly within the definition of a partnership, was a partnership entity which was the vendor in all of the sales transactions conducted by petitioner and Lester Ray Henderson during the years 1965, 1966 and 1967. Accordingly, as reflected in our ultimate findings of fact, we hold that the petitioner substantially understated his taxable income in each of the years *103 in issue. Issue 2. Claimed Beauty Shop Expenses, Repossession Losses and Rental Property Losses. On his Federal income tax return for 1965 the petitioner claimed the following expenses: Beauty Shop Expenses (less depreciation)
$4,605.55
Repossession Loss
800.87
Rental Property Loss
1,079.23
In his notice of deficiency respondent determined that $868.82 of the claimed beauty shop expenses, $536 of the claimed repossession loss and $499.66 of the claimed rental property loss were not allowable. Petitioner presented no evidence with respect to these adjustments. He failed to carry his burden of proof. Therefore, we sustain respondent's determination. On his Federal income tax return for 1967 the petitioner claimed a rental loss of $2,689.95. Respondent disallowed it. Petitioner offered no evidence on the issue. Therefore, we sustain respondent's determination. Issue 3. Claimed Rent and Royalty Loss for 1966. On his 1966 Federal income tax return the petitioner claimed a loss for rent and royalty property of $6,402.48. In his statutory notice of deficiency the respondent disallowed $3,210.35 of this claimed loss. Petitioner presented *104 no evidence at the trial concerning this adjustment. Therefore, we sustain respondent's determination. Issue 4. Recapture of Investment Credit.
On petitioner's Federal 1966 tax return his depreciation schedule listed a 1967 Ford wagon with a basis of $3,422. His 1966 and 1967 returns did not claim investment tax credit in either year. Petitioner's 1967 tax return does not reflect the Ford on the depreciation schedule.In the statutory notice of deficiency for 1966, respondent allowed unclaimed investment tax credit with respect to the Ford.In the statutory notice of deficiency for 1967, respondent recaptured this investment credit. Petitioner presented no evidence on this issue at the trial. Therefore, we sustain respondent's determination. Issue 5. Additions to Tax Under Section 6653(b).
Regardless of the applicability of collateral estoppel as to fraud with respect to petitioner's income tax returns for 1966 and 1967, [2] we think respondent has carried his burden of proof as to fraud for each of the years 1965, 1966 and 1967. *105 The issue of fraud is one of fact to be determined upon a consideration of the entire record. Stratton v. Commissioner,54 T.C. 255 (1970). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Fraud is never presumed, but must be affirmatively established by clear and convincing evience. [3]Beaver v. Commissioner,55 T.C. 85 (1970). Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. The consistent understatements of substantial amounts of income is persuasive evidence of fraud. United States v. Calderon,348 U.S. 160 (1954); Rogers v. Commissioner,111 F.2d 987 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); Arlette Coat Co. v. Commissioner,14 T.C. 751 (1950). *106 Certainly, repeated understatements of income in successive years when coupled with other circumstance showing an intention to conceal or misstate taxable income present a basis on which this Court may properly find fraud. Bryan v. Commissioner,209 F.2d 822, 824 (5th Cir. 1954), cert. denied 348 U.S. 912 (1955); Jenkins v. United States,313 F.2d 624 (5th Cir. 1963); Farber v. Commissioner,44 T.C. 408 (1965); Sunbrock v. Commissioner,48 T.C. 55 (1967); Lee v. United States,466 F.2d 11 (5th Cir. 1972). Here the petitioner failed to report any receipts from his illicit business activities on his 1965 return and he substantially understated his 1966 and 1967 receipts. There are other indicia of fraud present in this case. First, the petitioner failed to furnish books and records dealing with the "fencing" operation to his return preparer. Rather, the information concerning the operation was furnished orally with assurances that all income was reported. At the same time the petitioner knew that he should maintain adequate books and records, as evidenced by his use of a single *107 entry system of books with respect to his real estate operation. See Farber v. Commissioner,supra.Second, the evidence shows that the petitioner spent considerably more than his reported taxable income for the years in issue. From 1965 through 1967 he aquired three rental houses, two new automobiles, a new truck and investments in oil and gas interests. Yet, the taxable income he reported in two of the years was zero and only slightly more than $1,300 in the third year. And he received no inheritances or gifts over $100 in any of the three years. Cf. Bowlin v. Commissioner,31 T.C. 188, 207 (1958), affd. per curiam on another issue 273 F.2d 610 (6th Cir. 1960). Third, the petitioner and his partners, the Hendersons, dealt mostly in cash.The majority of the sales were either in cash or immediately converted into cash in some place other than a bank. See Spies v. United States,317 U.S. 492, 499 (1943). Petitioner also used assumed business names which were not disclosed on his tax returns and which were indications of his attempt to conceal his business activities and the income derived therefrom. And, *108 finally, the petitioner had a poor reputation for honesty and integrity in view of his conviction for filing false income tax returns for 1966 and 1967 on which he willfully underreported substantial axable income and for his conviction of nine counts of mail fraud. Accordingly, after examining and evaluating all the facts contained in this record, we have found and hold that part of the underpayments of tax for each of the years at issue was due to the petitioner's fraud. Thus, we sustain the additions to tax under section 6653(b). To reflect the conclusions reached herein, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩
2. See and compare Considine v. Commissioner,68 T.C. 52 (1977), and Goodwin v. Commissioner,73 T.C. No.↩ 20 (October 31, 1979).
3. Petitioner erroneously contends that respondent must prove "beyond a reasonable doubt" that the petitioner was the "end recipient of any alleged missing funds."↩