*Decisions will be entered under Rule 50.*

JACOB D. FARBER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JACOB D. FARBER AND ROZE FARBER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 91341, 91342. Filed June 22, 1965.

*Herman H. Krekstein, Merle A. Wolfson,* and *Nathan Miller,* for the petitioners.
*Albert J. O'Connor,* for the respondent.

SUPPLEMENTAL FINDINGS OF FACT AND OPINION

HOYT, *Judge:* On January 7, 1965, our Findings of Fact and Opinion was filed herein and decisions were to be entered in accordance therewith under Rule 50. *Jacob D. Farber,* 43 T.C. 407 (1965). On February 1, 1965, petitioners filed a "Motion to Reopen Trial for Introduction of Newly Discovered Evidence," which motion was set for hearing, if respondent filed objections thereto, on March 3, 1965. Respondent did file timely objections on February 12, 1965, and thereafter hearing was duly held and an order thereafter entered on March 18, 1965, granting the motion to reopen trial and setting the case for the taking of additional testimony, at Philadelphia, Pa., on March 26, 1965.

The Court now having considered the evidence adduced at said reopened trial, and having reviewed the whole record in the case, makes the following additional—

FINDINGS OF FACT

At Christmastime 1947, petitioner's wife, Roze Farber, consulted a psychologist, Yale S. Nathanson, because of domestic difficulties and quarrels she was having with her husband, petitioner herein, Jacob D. Farber. Nathanson, who was not a medical doctor, saw Farber on three or four occasions in the next 3 months, and he also saw and consulted with Roze Farber during this period—sometimes when she was alone and sometimes when she and Jacob came to his office together. According to his office records, he saw either one or both of the Farbers on the following dates: December 25, 27, and 31, 1947; January 3, 13, and 19, 1948; and March 6, 8, 9, and 16, 1948. On the fourth or fifth visit, the evidence being in conflict on this, Nathanson recommended that Farber consult a psychiatrist. Farber did not take kindly to this advice and resented Nathanson's suggestion that Roze Farber consult a lawyer. Jacob became antagonistic toward Nathanson and declined to follow his advice at that time; whether or not Farber ever saw a psychiatrist, the psychologist did not know. He last saw Farber in March of 1948.

Nathanson did not attempt to diagnose or treat Farber's condition but observed that Farber's behavior did not appear to be normal; that Farber was a disturbed man with a paranoid trend. Nathanson described Farber's behavior as grandiose, antagonistic, erratic, illogical, and not coherent. He expressed the opinion that some of the time Farber was in full contact with reality but that when he went off on a tangent he was not.

Nathanson did not conduct any psychological tests and his opinion about Farber's condition was based on his recollection of personal observation on the three or four occasions he saw Jacob and on information furnished at that time by Farber and by Roze. He did not consult with other associates of Farber's or make any investigation otherwise, and he made no diagnosis of Farber's mental condition either at that time or from the witness stand.

Nathanson had no records or documentary evidence to bolster his recollection of events which occurred 18 years before he testified, and he had not seen Farber in the intervening time. His only office record introduced in evidence at trial was a memorandum he had written on December 29, 1947, which read as follows:

29 December 1947

The Farber woman came in to see me 27 December without my sending for her. Her argument is that the two of them have been terribly unhappy. The husband is an oppressive, uncultured, crude man who struggled and has recently made a lot of money. The woman has always felt insecurity and therefore tried to get money of her own from him. The daughter, Bonnie, converted to the Friend's religion, married a 40 year old Episcopal divorcee. It's the old story of much wrangling and unpleasantness and they must now decide whether they want to

live together or separate. The thing to do now is to see both of them together and effect a marital adjustment.

Nathanson had been professionally consulted over a period of many years by Roze Farber's brothers and their families, and according to him it was because of his closeness to this family situation that he recalled the details of his visits with the Farbers in 1947 and 1948. He had discussed the Farber situation with these relatives of Roze Farber.

Nathanson received letters from Farber during this time, in the early months of 1948, from various parts of the country as Farber traveled around in connection with his business. These letters were referred to in Nathanson's testimony but not introduced into evidence.

#### OPINION

We are not persuaded by the additional evidence that our previously filed opinion should be altered except by adding the above additional findings of fact and a few observations and comments. We have carefully considered Nathanson's testimony, unsupported as it is by any contemporaneous records or data, in the light of the other evidence of record and of our observation of the witness upon the stand. It is merely another part of the entire picture and has to be weighed and evaluated along with all of the other evidence before us.

Nathanson's observations and recollection were based, to some extent at least, on information furnished to him by Roze Farber and members of her family. The few times he saw Jacob Farber were at a time when the Farbers were in the midst of a severe and difficult domestic strife and crisis. Obviously, Jacob was distressed and perturbed as no doubt Roze was also, during that period. It was a time of severe emotional distress and turmoil.

As our original opinion reflects, Jacob sued Roze for divorce in 1948 and, according to Nathanson, he moved out of the marital home in 1948. Yet during this time he was successfully conducting his business, and traveling all over the country in connection with this activity; even making calls to Washington from Nathanson's office about business matters and writing Nathanson about appointments and bills from Florida, Texas, and Louisiana, as he traveled around in this period of a few months.

Giving thoughtful and considered attention to this newly produced testimony, we could, at most, revise some of the language in our opinion and state that a psychologist who saw Jacob a few times late in 1947 and early in 1948 concluded that he was exhibiting abnormal behavior and paranoid tendencies, was mentally disturbed, and should consult a psychiatrist.

Each party presented additional testimony of a psychiatrist who had testified at the original trial herein and who was present at the reopened trial and heard the testimony of the newly discovered

witness, Yale S. Nathanson. Each of these experts expressed the further opinion that nothing in Nathanson's testimony changed his earlier views or opinions given before us at the original trial.

On the entire record now before us, we, too, are not convinced that we should change our views expressed in the opinion previously filed in 43 T.C. 407. We conclude once again that Jacob Farber had the mental capacity to file false and fraudulent income tax returns for the years 1948 through 1954 with intent to evade his taxes.

We also conclude once more that all of the evidence before us clearly and convincingly establishes that Farber filed false and fraudulent returns for the years 1948 through 1954, and that part of the resulting underpayment or deficiency for each year was due to fraud with intent to evade tax.

Our findings and conclusions contained in the opinion filed on January 7, 1965, are, except as herein modified, readopted and approved as correct. Accordingly,

*Decisions will be entered under Rule 50.*