CHARLES L. STEPHENS AND NADA RAE EVANS, FORMERLY NADA RAE STEPHENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE,Respondent; CHARLES L. STEPHENS, Petitioner v. COMMISSIONEROF INTERNAL REVENUE, Respondent
Stephens v. Commissioner
Docket Nos. 6430-78, 7730-78.
United States Tax Court
T.C. Memo 1981-85; 1981 Tax Ct. Memo LEXIS 665; 41 T.C.M. (CCH) 964; T.C.M. (RIA) 81085; February 24, 1981. Gary James Joslin, for the petitioners. Charles O. Cobb, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: In these consolidated cases the respondent determined the following deficiencies and additions to tax: Addition to Tax
Petitioners
Dkt. No.
Year
Deficiency
[1] Sec.6653(b)
Charles
L. Stephens
6430-78
1971
$ 1,482.00
$ 741.00
Nada Rae Evans
6430-78
1971
3,188.00
0
Charles
L. Stephens and
643-78
1972
5,756.00
2,878.00
Nada Rae Evans
6430-78
1972
5,756.00
0
Sec. 6653(a)
Charles
L. Stephens
7730-78
1974
9,029.00
$ 451.00
*666 Certain adjustments relating to business expenses and itemized deductions have been resolved by agreement of the parties as reflected in the stipulation of facts. Adjustments for the year 1971 relating to community property allocations of income and expenses have not been contested by the petitioners. Thus, the issues remaining for decisions are: (1) whether the petitioner Charles L.Stephens received unreported taxable income for each of the years 1971, 1972 and 1974 from accounting services; (2) whether the distributive share of partnership income reported by petitioner Charles L. Stephens on his Federal income tax return for 1974 with respect to a partnership known as Land Equities should be increased by $ 80; (3) whether any part of the underpayment of income tax for each of the years 1971 and 1972 was due to the fraud of petitioner Charles L. Stephens with intent to evade tax; (4) whether petitioner Charles L. Stephens is liable for the section 6653(a) addition to tax for the year 1974; and (5) whether the deficiencies and additions *667 to tax are unconstitutional on the grounds that they violate rules of uniformity, due process of law or equal protection of the law. All of the facts have been stipulated by the parties. The stipulation of facts and attached exhibits are incorporated herein by the reference and are summarized below. In 1971 and 1972 Charles L. Stephens (petitioner) and Nada Rae Evans, formerly Nada Rae Stephens, were husband and wife who resided in Hacienda Heights and Granada Hills, California, respectively, when the petitions were filed in these cases. They were divorced in 1974. The petitioner and Nada Rae Evans filed separate Federal income tax returns for the year 1971. On the petitioner's separate return he reported income from employment by Pacific Intermountain Express Company of $ 13,871, partnership income of $ 1,248 and interest income of $ 16. Taxable income as shown on this return is $ 8,026. On the separate return filed by NadaRae Evans for 1971 she reported income from employment by Beneficial Standard Life Insurance Company in the amount of $1,875.89. Adjusted gross income shown on her return is $ 1,875.89. The petitioners filed a joint Federal income tax return for *668 the taxable year 1972 on which they reported $ 17,332 in income from the employment of Charles L. Stephens by Pacific Intermountain Express Company and $ 1,270 in partnership income. Taxable income shown on the return for that year is $ 9,266. Petitioner filed a separate return for the year 1974 on which he reported income from employment by Pacific Intermountain Express Company of $ 13,212, income from employment by IML Freight Lines, Inc., of $ 2,910, and partnership income of $ 1,792. He also reported $ 16,613 in accounting fees against which $ 12,160 in deductions were claimed. Taxable income shown on the return for that year is $14,928. In addition to his employment by Pacific Intermountain Express Company in 1971, 1972 and 1974, and his employment by IML Freight Lines in 1974, the petitioner was during those years in the business of providing accounting services to various individuals and companies primarily involved in the trucking and transportation business. In exchange for providing accounting services, the petitioner received fees in the form of checks. The total face amount of the checks received by him in 1971, 1972 and 1974 for such services were as follows: *669 Year
Amount
1971
$ 12,913
1972
15,037
1974
24,504
Petitioner incurred business expenses in connection with providing accounting services as follows: Year
Amount
1971
$ 3,197
1972
3,252
1974
5,670
None of the fees for accounting services or related business expenses were reported by petitioner or Nada Rae Evans on their Federal income tax returns for 1971 and 1972.
Petitioner had itemized deductions as follows: Year
Deduction
Amount
1971
Medical
$ 1,104
Other
4,157
1972
Medical
2,142
Other
4,511
1974
Other
5,131
The parties have stipulated that the nets of the amounts set out above, taking into account the amounts shown on petitioners' Federal income tax returns for the years in issue and the limitation on medical deductions, are as follows: Year
Net Amount
1971
$18,111
1972
24,646
1974
31,697
Petitioners have not stipulated that the amounts set out above are "properly characterized as dollars but rather as Federal reserve note units." They also have not stipulated as to the value of the checks received by petitioner Charles L. Stephens. For the years in issue the number *670 of Federal Reserve notes of one unit required in exchange for 25.8 grains of gold,.9 fine, was as follows: Year
Number
1971
2.16
1972
2.96
1974
8.33
During these years a Federal Reserve note of one unit would exchange for the following portion of 25.8 grains of gold,.9 fine: Year
Number
1971
.46
1972
.34
1974
.12
In summary, $ 18,111 divided by 2.16 equals $ 8,384.72 in 1971; $ 24,646 divided by 2.96 equals $ 8,326.35 in 1972; and $ 31,697 divided by 8.33 equals $ 3,805.16 in 1974. On or about March 1976, an indictment was filed in the criminal case of United States v. Charles L. Stephens, No. 76-370 (C.D. Calif. July 12, 1976), charging the petitioner, in two counts, of signing and filing returns for the years 1971 and 1972 which he did not believe to be true and correct, in violation of section 7206(1), Internal Revenue Code, because the returns did not report income from accounting fees he had received in those years. On July 12, 1976, the United States District Court for the Central District of California entered a judgment of conviction finding petitioner Charles L. Stephens guilty as charged in the two *671 count indictment. Issue 1. Understatements of Taxable Income
The stipulated facts in these cases establish that the petitioner not only received income from his employment with Pacific Intermountain Express Company and IML Freight Lines but he also provided accounting services to individuals and companies engaged in the trucking and transportation business. For the latter services he received fees of$ 12,913 in 1971, $ 15,037 in 1972 and $ 24,504 in 1974. These accounting fees were not reported by the petitioner on the Federal income tax returns filed for 1971 and 1972. Theamount of $ 16,613 was reported by him on his Federal income tax return for 1974, thus resulting in an understatement of fees for that year of $ 7,891. After taking into consideration the stipulated business expenses and itemized deductions, the understatements of taxable income for the years 1972and 1974 are $ 13,130 and $ 15,269, respectively. For the year 1971, when the petitioners, who were then husband and wife, filed separate returns, the community property laws of California are applicable. Cal. Civ. Code, Sec. 5110. Thus, all items of income and expense of a husband *672 and wife must be evenly divided between them for reporting purposes if they elect to file separate returns. Kimes v. Commissioner, 55 T.C. 774 (1971); Porter v. Commissioner, T.C. Memo. 1979-104. When applied herein, the community property rules of California require that both the accounting fees earned by the petitioner in 1971 together with other income reported by him and Nada Rae Evans on their 1971 returns be equally divided between them. The result is total gross income properly reportable on the separate return of petitioner of$ 14,962, and gross income in the same amount properly reportable on the separate return of Nada Rae Evans. Total business and itemized deductions must also be divided between them. Hence there is an understatement of taxable income for 1971 on petitioner's separate return of $ 1,758 and an understatement of taxable income on the separate return of Nada Rae Evans of $ 8,583. Issue 2. Increase in DistributiveShare of Partnership Income
In the notice of deficiency sent to petitioner for the year 1974 respondent determined that he received income from a partnership, known as Land Equities, in the amount of $ *673 1,872 rather than the $ 1,792 reported on the return. This adjustment was placed in issue by the petition, but no evidence regarding the adjustment was offered by petitioner. Therefore, we sustain respondent's determination. Issue 3. Section 6653(b) Additions to Tax
The issue of fraud is one of fact to be determined upon a consideration of the entire record. Stratton v. Commissioner, 54 T.C. 255 (1970). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Fraud is not presumed, but must be affirmatively established by clear and convincing evidence. Beaver v. Commissioner, 55 T.C. 85 (1970). Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. We conclude on this record that the petitioner is collaterally estopped to deny that he filed fraudulent returns which substantially understated his income for 1971 and 1972 and that respondent has shown by clear and convincing evidence that an underpayment to tax resulted from these understatements of income, *674 a part of which was due to fraud. On July 12, 1976, the United States District Court for the Central District of California entered a judgment of conviction finding the petitioner Charles L. Stephens guilty of subscribing to false Federal income tax returns, in violation of section 7206(1), for the years 1971 and 1972. The grounds set forth in the indictment were that, in March 1972, the petitioner signed and filed a Federal income tax return for the year 1971 which he did not believe to be true and correct in that he failed to report accounting fees, and that, in February 1973, he signed and filed a Federal income tax return for the year 1972 which he did not believe to be true and correct in that he failed to report accounting fees. This judgment of conviction estops him from denying that his returns were false and fraudulent and that there was an omission of income from his return in each year. Goodwin v. Commissioner, 73 T.C. 215 (1979), Considine v. Commissioner, 68 T.C. 52 (1977). It constituted an act of fraud for the purposes of section 6653(b). But respondent still bears the burden of proving an underpayment of tax. We think this burden *675 has been carried by the stipulation of facts. It is clear that the petitioner failed to report accounting fees earned by him in 1971 and 1972 in the amounts of $ 12,913 and $ 15,037, respectively, resulting in an understatement of taxable income on the separate returns filed by him and his former spouse for 1971 in the total amount of $ 10,341, and an understatement of $ 13,130 in taxable income on the joint return filed by him and his former spouse for 1972. The consistent understatements of substantial amounts of income over several years are, standing alone, persuasive evidence of fraudulent intent. United States v. Calderon,348 U.S. 160 (1954); Schwarzkopf v. Commissioner, 246 F.2d 731 (3d Cir. 1957), affirming a Memorandum Opinion of this Court; Rogers v. Commissioner, 111 F.2d 987 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); Arlette Coat Co. v. Commissioner, 14 T.C. 751 (1950). Certainly, repeated understatements of income in successive years when coupled with other circumstances showing an intention to conceal or misstate taxable income present a basis on which this Court may properly find fraud. *676 Bryan v. Commissioner, 209 F.2d 822, 824 (5th Cir. 1954), cert. denied 348 U.S. 912 (1955); Jenkins v. United States, 313 F.2d 624 (5th Cir. 1963); Farber v. Commissioner, 44 T.C. 408 (1965); Sunbrock v. Commissioner, 48 T.C. 55 (1967); Lee v. United States, 466 F.2d 11 (5th Cir. 1972). Here the petitioner failed to report substantial amounts of his income from accounting services. Accordingly, we sustain the additions to tax under section 6653(b). Issue 4. Section 6653(a) Addition to Tax
For the year 1974 it is stipulated that the petitioner received $ 24,504 in fees for providing accounting services, which amount was substantially more than that reported on his tax return for such year. The petitioner bears the burden of proving that the underpayment was not due to his negligence. Axelrod v. Commissioner, 56 T.C. 248, 258 (1971). He presented no evidence. Therefore, the section 6653(a) addition to tax is sustained. Issue 5. Constitutional Arguments
Petitioners' opening brief is devoted almost exclusively to various constitutional arguments. Their *677 principal contention is that the income received by them should be discounted or reduced in order to reflect the value of Federal Reserve notes vis-a-vis what the petitioners call "dollars of gold." Their argument begins with the proposition that the checks, in which form the petitioners' income was received, are property that can be converted at their face amount into Federal Reserve notes only. Federal Reserve notes, they say, are also property, not money. Since Federal Reserve notes cannot be redeemed, unit for unit, for "lawful" or "standard" money, which the petitioners, relying on 31 U.S.C. sec. 314, identify as the dollar of gold, 25.8 grains in weight,.9 fine, the notes cannot be valued at their face amount. The notes, they argue, must be valued in some other way, and this they seek to do by dividing their income by the number of Federal Reserve notes required to purchase 25.8 grains of gold. Petitioners have made several misstatements of law in advancing this argument. For example, they assert that the Federal Reserve banks are acting illegally in their refusal to redeem Federal Reserve notes, unit for unit, for dollars of gold. However,section 408a *678 of Title 31, United States Code, provides that except to the extent permitted in regulations which may be issued hereunder by the Secretary of Treasury with the approval of the President, no currency of the United States shall be redeemed in gold. See also 31 U.S.C. sec. 315b discontinuing the coinage of gold. Petitioners also assert that under 31 U.S.C. sec. 314 the statutory content of the gold dollar for domestic purposes is 25.8 grains of gold. However,as made clear by H. Rept. No. 1095, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. & Adm. News 1760, 1961, the United States abandoned the domestic gold standard by official actions in 1933 and 1934. Since 1972, the gold content, i.e., par value of the dollar, has been set by the Secretary of Treasury at the direction of Congress. 31 U.S.C. sec. 449, repealed Pub. L. 94-564, sec. 6, 90 Stat. 2661 (1976). Prior to that time the gold content of the dollar was set, by promulgation of the President, at 15 and 5/21 grains. 31 U.S.C. secs. 314, 821; 31 C.F.R. secs. 55.1, 55.2. See also S. Rept. No. 92-678, 92d Cong., 2d Sess (1972), *679 reprinted in 1972 U.S. Code Cong. & Adm. News 2209, 2221. Thus, the domestic purpose now served by fixing a relationship between gold and the dollar relates to the issuance of gold certificates used by the Treasury in its dealing with the Federal Reserve banks. 31 U.S.C. sec. 405b; S. Rept. No. 94-1295, 94th Cong., 2d Sess (1976), reprinted in 1976 U.S. CodeCong. & Adm. News 5950, 5966-5967. We think it is unnecessary to address the specifics of petitioners' argument because it suffers from the same basic flaw of all arguments which attempt to raise the relationship of Federal Reserve notes to gold as a bar, in whole or in part, to the income tax, i.e., the contention that Federal Reserve notes are not money. It is clear that the courts have consistently held that Federal Reserve notes constitute legal tender--money--and income at face value. See Hatfield v. Commissioner, 68 T.C. 895, 897 (1977); Sibla v. Commissioner, 68 T.C. 422, 430-431 (1977), affd. without discussion of the issue 611 F.2d 1260 (9th Cir. 1980); Gajewski v. Commissioner, 67 T.C. 181, 193-194 (1976), affd. without opinion *680 578 F.2d 1383 (8th Cir. 1978); Cupp v. Commissioner, 65 T.C. 68, 84 (1975), affd. without opinion 559 F.2d 1207 (3d Cir. 1977); Leitch v. Commissioner, T.C. Memo. 1979-75, on appeal (9thCir. June 7, 1979). [2]
Petitioners have made a broadside attack on the validity of the Internal Revenue Code, claiming that it is unconstitutional under Art. 1, Sec. 8, Cl. 1 of the Constitution of the United States, which *681 provides that "all duties, imposts and excises shall be uniform throughout the United States," and the due process and equal protection clauses of Amendments V and XIV. Their primary contention is that the income tax law is unconstitutional because the progressive rate structure, provided by section 1of the Code, discriminates against the more productive members of society. This same argument was presented to and rejected by the Supreme Court many years ago in Brushaber v. UnionPacific R.R. Co.,240 U.S. 1, 25 (1916). Since that time similar arguments, attacking the progressive rate structure of the income tax as discriminatory and unconstitutional, have been raised and have been summarily rejected by the courts. See, e.g., Mullen v. Commissioner,T.C. Memo. 1964-44; Reinertson v. Commissioner,T.C. Memo. 1977-130. Certainly there is nothing to suggest that the use of graduated rates constitutes invidious discrimination. Petitioners have also attacked the constitutionality of the income tax on the ground that it discriminates between married and single persons. This argument has likewise been raised and rejected on other *682 occasions. See Kellems v. Commissioner, 58 T.C. 556 (1972), affd. per curiam 474 F.2d 1399 (2d Cir. 1973), cert. denied 414 U.S. 831 (1973); Shinder v. Commissioner, 395 F.2d 222 (9th Cir. 1968), affg. per curiam T.C. Memo. 1967-73. We also reject, as lacking merit and substance, the petitioners' argument that the Internal Revenue Code is discriminatory and unconstitutional because it is designed to serve the "favored few" and contains "a multitude of tax loopholes." To reflect the stipulations of the parties and our conclusions on the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩
2. Arguments similar to those made by the petitioners have been uniformly rejected and variously characterized by the courts as "clearly spurious" in Hartman v. Switzer, 376 F. Supp. 486, 490 (W.D. Pa. 1974); as "frivolous" in United States v. Daly, 481 F.2d 28, 30 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); as "without merit" in United States v. Schmitz, 542 F.2d 782, 785 (9th Cir. 1976); and as "groundless" in United Statesv. Anderson,584 F.2d 369, 374 (10th Cir. 1978). With respect to petitioners' 141 page brief relating in large part to the legal tender arguments, parturientmontesnasceturridiculusmus↩.