T.C. Memo. 1996-514


UNITED STATES TAX COURT


LAWRENCE J. POLIDORI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1902-95.                    Filed November 19, 1996.


<u>Sherwin C. Peltin</u>, for petitioner.

<u>J. Paul Knap</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined deficiencies in and

additions to petitioner's Federal income tax as follows:[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

| | | Additions to Tax | |
| Year | Deficiency | Sec. 6661 | Sec. 6653 (b) |
| --- | --- | --- | --- |
| 1980 | $113,469 | -- | $64,650 |
| 1981 | 39,563 | -- | 28,150 |
| 1982 | 40,360 | $10,090 | 25,125 |
| 1983 | 19,561 | 4,890 | 9,781 |
| 1984 | 19,286 | 4,822 | 9,643 |
| 1985 | 41,813 | 10,453 | 20,907 |
| 1986 | 21,143 | 5,286 | 12,907 |

After concessions, the issues for decision are:

(1)  Whether certain deposits to a foreign bank account constitute unreported income to petitioner.  We hold that they do.

(2)  Whether petitioner is liable for additions to tax for fraud under section 6653(b) for 1980 and 1981, under section 6653(b)(1) and (2) for 1982 through 1985, and under section 6653(b)(1)(A) and (B) for 1986.  With respect to taxable years 1980 through 1984, we hold that he is.  With respect to taxable years 1985 and 1986, we hold that he is not.

(3)  Whether petitioner is liable for the addition to tax under section 6661 for a substantial understatement in income tax for taxable years 1982, 1983, 1984, 1985, and 1986.  To the extent provided for herein, we hold that he is.

(4)  Whether the period of limitations has expired for assessment and collection of the deficiencies in and additions to petitioner's Federal income tax for any year at issue.  With respect to taxable years 1980 through 1984, we hold that it has not.  With respect to taxable years 1985 and 1986, we hold that it has.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein. At the time the petition was filed, petitioner resided in Ozona, Florida.

Petitioner and his former spouse[2] were husband and wife throughout the years at issue. They filed joint Federal individual income tax returns for taxable years 1980, 1981, 1982, 1983, 1984, and 1985. Despite being married, petitioner filed his 1986 Federal individual income tax return using the filing status of "head of household."

Petitioner was a practicing dentist throughout the years at issue. During that period, both he and his former spouse were co-owners of a foreign bank account (the foreign account) located in the Bahamas. From time to time, petitioner opened subsidiary accounts within the foreign account for various investment purposes. Neither petitioner nor his former spouse made withdrawals from the foreign account prior to 1986.[3] On September 1986, petitioner opened a second foreign account with the same Bahamian bank. Unlike the first foreign account,

---

[2]Petitioner's former spouse, Fern M. Polidori, is not a party in this case.

[3]The parties have stipulated that neither petitioner nor his former spouse withdrew funds from the foreign account prior to 1986. The account records, however, indicate that at least one cash withdrawal was made on September 29, 1981, in the amount of $300.

however, petitioner was the sole owner of this second account. The first foreign account was closed in November 1986.[4]

During the years at issue, petitioner made 66 deposits to the foreign account. Many intra-account transfers were also made. The aggregate annual deposits to the foreign account were as follows:

| Year | Number of Deposits | Amount Deposited |
|------|--------------------|------------------|
| 1980 | 6 | $202,000 |
| 1981 | 15 | 42,031 |
| 1982 | 17 | 52,016 |
| 1983 | 10 | 24,205 |
| 1984 | 5 | 17,695 |
| 1985 | 12 | 51,484 |
| 1986 | 1 | 1,096 |

More specifically, individual deposits to the foreign account were as follows:[5]

### Taxable Year 1980

| Date | Deposits |
|------|----------|
| 2/12/80 | $ 20,000.00 |
| 6/4/80 | 10,000.00 |
| 6/23/80 | 80,000.00 |
| 6/30/80 | 12,000.00 |
| 7/14/80 | 70,000.00 |
| 11/24/80 | 10,000.00 |
| total | $202,000.00 |

---

[4]Throughout the remainder of this opinion, no distinction is made between these two foreign accounts.

[5]Some pages of the account records are partially illegible, and asterisks are used where figures could not be determined.

Taxable Year 1981

| Date | Deposits |
|---|---|
| 5/20/81 | $ 4,000.00 |
| 5/28/81 | 1,500.00 |
| 6/9/81 | 3,874.00 |
| 6/29/81 | 2,425.00 |
| 7/14/81 | 2,300.00 |
| 7/22/81 | 2,400.00 |
| 8/*/81 | 12,505.23 |
| 8/21/81 | 800.00 |
| 8/31/81 | 2,300.00 |
| 9/3/81 | 1,300.00 |
| 9/15/81 | 1,400.00 |
| 9/23/81 | 1,000.00 |
| 9/29/81 | 3,473.** |
| 11/19/81 | 1,300.00 |
| 11/30/81 | 1,453.60 |
| total | $42,031.** |

Taxable Year 1982

| Date | Deposits |
|---|---|
| 2/17/82 | $3,200.00 |
| 2/26/82 | 2,103.40 |
| 3/11/82 | 1,000.00 |
| 4/7/82 | 2,138.40 |
| 5/12/82 | 3,649.00 |
| 6/16/82 | 1,000.00 |
| 6/22/82 | 1,500.00 |
| 7/27/82 | 1,225.00 |
| 8/18/82 | 6,700.00 |
| 10/5/82 | 5,500.00 |
| 10/15/82 | 3,000.00 |
| 10/18/82 | 2,000.00 |
| 11/18/82 | 3,500.00 |
| 11/19/82 | 6,500.00 |
| 12/15/82 | 3,000.00 |
| 12/15/82 | 3,200.00 |
| 12/30/82 | 2,800.00 |
| total | $52,015.80 |

### Taxable Year 1983

| Date | Deposits |
|------|---------:|
| 1/5/83 | $2,000.00 |
| 3/8/83 | 2,500.00 |
| 5/31/83 | 2,400.00 |
| 6/8/83 | 1,500.00 |
| */*/83 | 3,395.00 |
| */*/83 | 2,000.00 |
| */*/83 | 4,110.00 |
| */*/83 | 3,300.00 |
| 11/*/83 | 3,000.00 |
| 11/*/83 | 2,900.00 |
| total | [1]$27,105.00 |

[1]The parties stipulated that deposits to the foreign account in 1983 totaled $24,205, but a review of the account records indicates that their stipulation failed to account for the $2,900 deposit on 11/*/83.

### Taxable Year 1984

| Date | Deposits |
|------|---------:|
| 4/19/84 | $ 2,393.00 |
| 4/30/84 | 2,915.20 |
| 5/30/84 | 4,069.30 |
| 6/1*/84 | 2,717.70 |
| 9/5/84 | 5,600.00 |
| total | $17,695.20 |

### Taxable Year 1985

| Date | Deposits |
|------|---------:|
| 1/*/85 | $ 9,340.50 |
| 2/*/85 | 1,049.00 |
| 2/*/85 | 998.25 |
| 2/*/85 | 931.00 |
| */*/85 | 3,428.42 |
| 5/3/85 | 3,388.55 |
| 5/24/85 | 3,183.60 |
| 7/1/85 | 4,517.50 |
| 11/14/85 | 1,235.80 |
| 11/14/85 | 4,444.37 |
| 12/12/85 | 17,289.57 |
| 12/12/85 | 1,677.40 |
| total | $51,483.96 |

Taxable Year 1986

| Date | Deposits |
|------|----------|
| 4/2/86 | $1096.00 |
| total | $1096.00 |

The account records indicate that most of the 66 deposit transactions involved the deposit of multiple checks.

During the years at issue, the foreign account earned the following amounts of interest:

| Year | Interest Earned |
|------|-----------------|
| 1980 | $ 7,503 |
| 1981 | 33,286 |
| 1982 | 33,594 |
| 1983 | 24,408 |
| 1984 | 30,539 |
| 1985 | 48,621 |
| 1986 | 36,886 |

In 1980, petitioner also realized a short-term capital gain in the amount of $13,117.23 from assets contained in the foreign account.

Petitioner used a professional accountant to prepare his tax returns for each year at issue. He did not, however, provide the accountant with information pertaining to the existence of the foreign account. Consequently, the accountant did not include, and petitioner did not report on his returns for any taxable year at issue, either the interest earned on the foreign account or the short-term capital gain realized in 1980.[6] Petitioner

------

[6]Similarly, petitioner did not file a Form 90-22.1 (report of foreign bank and financial account) with regard to the foreign account for any taxable year at issue.

reported the following amounts of gross income for the taxable years at issue:

| Year | Gross Income |
|------|--------------|
| 1980 | $77,539 |
| 1981 | 70,185 |
| 1982 | 60,665 |
| 1983 | 57,343 |
| 1984 | 104,827 |
| 1985 | 55,367 |
| 1986 | 66,994 |

The tax returns petitioner filed for each taxable year at issue include a Schedule B. Each Schedule B specifically inquires as to whether petitioner maintained a foreign bank account at any time during the corresponding taxable year.[7] Instructions contained on each Schedule B require the answer to this inquiry to be indicated by marking a box labeled either "Yes" or "No." Petitioner left the blocks corresponding to this inquiry blank on his returns for each taxable year at issue, except years 1984 and 1985. With respect to taxable years 1984 and 1985, petitioner explicitly indicated on each Schedule B that he did not maintain a foreign bank account at any time during the year.

On October 5, 1992, petitioner, in accordance with a plea agreement, pleaded guilty to and was convicted of filing false individual income tax returns for taxable years 1985 and 1990, in

---

[7]Respondent states on brief that petitioner's returns for 1982 and 1986 did not specifically make this inquiry; however, an examination of those returns shows respondent to be in error.

violation of section 7206(1). Count one of the plea agreement

reads as follows:

>     That on or about April 15, 1986, in the State and
> Eastern District of Wisconsin,
>
>         [Petitioner]
>
> the defendant herein, who, during the calendar year
> 1985, was a resident of Franksville, Wisconsin, did
> willfully make and subscribe a joint federal income tax
> return (Form 1040) on behalf of himself and his then-
> wife Fern Polidori, for the calendar year 1985, which
> return was verified by a written declaration that it
> was made under the penalties of perjury, and was filed
> with the Internal Revenue Service, which return the
> defendant did not believe to be true and correct as to
> every material matter in the following respects:
>
>>     (1)    The defendant falsely indicated on the
>> return that he did not have any financial
>> accounts in foreign countries during 1985,
>> whereas, in fact, as the defendant well knew,
>> he and his then-wife had an account at the
>> Swiss Bank Corporation (Overseas) Ltd.,
>> located in Nassau, Bahamas, in which, at
>> various times during 1985, he had deposits
>> exceeding $500,000;
>>
>>     (2)    The defendant falsely indicated on the
>> return that he and his then-wife had total
>> income during the year 1985 of only
>> $55,367.43, whereas, as the defendant well
>> knew, he and his wife had total income
>> substantially in excess of the amount stated
>> because the defendant and his wife had earned
>> substantial additional income during 1985 on
>> their deposits at the Swiss Bank Corporation
>> (Overseas) Ltd., Nassau, Bahamas, which
>> income was not reported on the return; and
>>
>>     (3)    The defendant falsely indicated on the
>> return that he and his then-wife had interest
>> income during 1985 of only $450.76, whereas,
>> as the defendant well knew, he and his wife
>> had interest income in excess of the amount
>> stated.

All in violation of Title 26, United States Code, Section 7206(1).

Respondent determined that petitioner fraudulently omitted from income the interest on the foreign bank accounts for each taxable year at issue.  She also determined that petitioner made the 66 deposits to the foreign account using unreported income, and that petitioner failed to report the short-term capital gain realized in 1980.  Respondent thereafter issued the notice of deficiency, reflecting those determinations, on November 4, 1994.

OPINION

Petitioner concedes that he failed to report gross income from both the interest earned on the foreign account and the short-term capital gain that he realized in 1980.  He maintains, however, that respondent is precluded from assessment and collection of the deficiencies in and additions to tax determined in the notice of deficiency because the statute of limitations has expired for each year at issue.  Respondent disagrees, contending that each limitations period remains open because petitioner filed fraudulent tax returns for the corresponding taxable years.  Respondent further maintains that petitioner has not established a nontaxable source for the 66 deposits that he made to the foreign account, and, as a result, such deposits constitute unreported income taxable to him.  Petitioner disagrees and contends that he has established a nontaxable source for the deposits at issue.

For reasons discussed herein, we conclude that, except as to taxable years 1985 and 1986, the statute of limitations does not preclude assessment and collection of the deficiencies in and additions to tax determined by respondent. We further conclude that petitioner has failed to establish a nontaxable source for the 66 deposits that he made to the foreign account.

Issue 1. Bank Deposits

Bank deposits are prima facie evidence of income, and petitioner must show that the funds deposited into the foreign account were not obtained from a taxable source. Rule 142(a); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). In order to satisfy his burden, petitioner contends that he had ample resources from the liquidation of real estate and other assets to provide the funds needed to make the deposits at issue. He contends that a sale of 4 real properties in 1979, a receipt of several periodic installment and balloon payments, the collection of a mortgage, and a real property sale in 1984 provided him with the means needed to make the 66 deposits at issue. He then contends that this "clearly credible evidence" satisfies his burden and shifts the burden of coming forward to respondent. We disagree.

Apparently, petitioner fails to appreciate the extent of his burden of proof; moreover, he has fallen far short in his attempt to shift the burden of coming forward to respondent. Petitioner has indeed presented the Court with evidence suggesting that he

possessed the financial resources needed to make the 66 deposits at issue.  However, despite his alleged ability to make said deposits, petitioner has not convinced the Court that the deposits were made using proceeds that he received from the real estate transactions he cites.  Petitioner has simply identified a possible source of funds from which the deposits at issue may have been made.  Yet merely identifying a possible source of funds does not satisfy petitioner's burden.  In order to refute respondent's determination, petitioner must establish that the bank deposits at issue were made from a nontaxable source of funds.  Rule 142(a); Reaves v. Commissioner, 31 T.C. 690, 718 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Romer v. Commissioner, 28  T.C. 1228, 1244 (1957).

Petitioner's testimony about his having made the deposits at issue using proceeds that he received from various real estate transactions is questionable, and we reject it as such.  Although petitioner's testimony was not contradicted at trial, this Court is not required to accept a taxpayer's uncontradicted testimony if we find such testimony improbable, unreasonable, or questionable.  Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; MacGuire v. Commissioner, 450 F.2d 1239, 1244 (5th Cir. 1971), affg. T.C. Memo. 1970-89; see also Tokarski v. Commissioner, supra.

Furthermore, the size and frequency of the deposits at issue render petitioner's argument suspect.  Of the 66 total deposits,

53, or 80 percent, were for less than $5,000; 34 were for less than $3,000. Additionally, most deposits consisted of multiple checks. This means that the denominations of the checks used to make the deposits were less than the amounts indicated in the account records as being the total amount of each transaction.[8] Petitioner has not attempted to explain this peculiar pattern of predominantly small deposits. While it is conceivable that petitioner deposited the proceeds that he allegedly received from the real estate transactions into some unidentified account, and then periodically deposited checks drawn against that account into the foreign account, we hesitate to reach this conclusion because petitioner has neither argued nor proved it. It is equally conceivable that the deposits at issue were made using a source of funds wholly unrelated to the transactions petitioner cites. All that is certain is that (1) several real estate transactions occurred during the years at issue, and (2) 66 predominantly small deposits were made throughout the course of the 7-year period before the Court. Nothing in the record, however, other than petitioner's self-serving testimony, links these facts. While the exhibits petitioner relies upon may in fact indicate his financial ability to make the deposits at issue, they do not indicate, or even remotely suggest, that such

[8]For example, the account records indicate that 17 deposits made in 1982 consisted of 35 separate checks.

deposits were made using proceeds derived from the transactions described in those exhibits.

By not attempting to trace the subject proceeds to a single deposit, or even a particular year, petitioner has left a hole in his argument. Tracing the proceeds from the underlying transactions to the deposits at issue should not have been a difficult task for petitioner to accomplish. Canceled checks and past bank statements might have been persuasive evidence in this regard. Petitioner's failure to provide corroborative evidence presumably in his control weighs against him. Tokarski v. Commissioner, supra; Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Having rejected petitioner's questionable testimony, and given his failure to explain the size and frequency of the deposits at issue, as well as his failure to trace the proceeds derived from the real estate transactions to such deposits, we conclude that petitioner has not established that respondent's determination is erroneous. Accordingly, we resolve this issue in favor of respondent.

Issue 2. Additions to Tax Under Section 6653(b)

Respondent contends that petitioner is liable for the addition to tax for civil fraud under section 6653(b) for 1980 and 1981, under section 6653(b)(1) and (2) for 1982, 1983, 1984, and 1985, and under section 6653(b)(1)(A) and (B) for 1986.

Specifically, respondent contends that petitioner fraudulently omitted the interest earned on the foreign account from income for each taxable year at issue.  In contrast, petitioner maintains that his failure to report the interest was not fraudulent, but rather the result of his failure to appreciate the income tax reporting requirements governing interest earned on foreign accounts.

Respondent bears the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  The burden that respondent bears in proving fraud under section 6653(b) or section 6501(c)(1) is one and the same.  Estate of Temple v. Commissioner, 67 T.C. 143, 159-160 (1976).  Respondent must establish that petitioner underpaid his taxes for each taxable year at issue and that some part of that underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax.  Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977); McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th

Cir. 1975). The issue of fraud presents a factual question which must be decided on the basis of an examination of all evidence contained in the record. Mensik v. Commissioner, 328 F.2d 147 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner, 56 T.C. 213, 224 (1971); Stratton v. Commissioner, 54 T.C. 255, 284, modified 54 T.C. 1351 (1970). Fraud is never presumed; it must be established by independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85 (1970). Fraud may be proved by circumstantial evidence and inferences drawn from the record because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Fraudulent intent may be inferred from a pattern of conduct. Spies v. United States, supra at 499. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States, 348 U.S. 121, 137 (1954); Otsuki v. Commissioner, 53 T.C. 96 (1969).

### Understatement of Income Tax

In order for respondent to prove fraud with respect to the taxable years at issue, she must establish by clear and convincing evidence that an underpayment of tax exists with respect to such taxable years. Parks v. Commissioner, supra; Hebrank v. Commissioner, supra. In establishing the existence of

an underpayment, however, respondent cannot rely on a taxpayer's failure to overcome the normal presumption of correctness attributed to the notice of deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). In general, for purposes of section 6653(b), the term "underpayment" has the same meaning as the term "deficiency," as that term is defined in section 6211(a). Sec. 6653(c)(1).

We find that respondent has satisfied this prong of her burden with respect to taxable years 1980 through 1984. Respondent, however, has not satisfied her burden with respect to the existence of an underpayment for taxable years 1985 and 1986.

As to taxable years 1980 through 1983, petitioner's stipulation that he failed to report gross income from interest on the foreign bank accounts during those years establishes that an underpayment exists with respect to each of those years. As to taxable years 1984, 1985, and 1986, however, respondent has conceded that petitioner is entitled to deductions for charitable contributions in the amounts of $25,132.24, $64,982.70, and $65,352.00, respectively. Accordingly, we address those years in turn.

With respect to taxable year 1984, an underpayment of tax exists because the amount of unreported interest income conceded by petitioner exceeds the amount of the additional charitable deduction conceded by respondent.

With respect to taxable year 1985, respondent has not carried her burden in establishing the existence of an underpayment. Respondent cannot rely on petitioner's failure to establish a nontaxable source for the bank deposits discussed earlier in this opinion in order to satisfy her burden. Otsuki v. Commissioner, supra. Instead, if the bank deposits are to be considered in determining whether an underpayment exists, respondent must establish by clear and convincing evidence that such deposits were unreported income. She has not done so. Hence, in determining whether an underpayment exists, the bank deposits may not be considered. Therefore, because the amount of the additional charitable deduction conceded by respondent for taxable year 1985 exceeds the unreported interest income conceded by petitioner for that year, we find that respondent has not established by clear and convincing evidence that an underpayment exists for taxable year 1985.

Respondent has also failed to establish the existence of an underpayment for taxable year 1986. As is the case for taxable year 1985, and for the same reasons, the bank deposits cannot be considered when determining whether an underpayment exists for taxable year 1986. Accordingly, because the amount of the additional charitable deduction conceded by respondent for taxable year 1986 exceeds the unreported interest income conceded by petitioner for that year, we find that respondent has not

established by clear and convincing evidence that an underpayment exists for taxable year 1986.

## Fraudulent Intent

After establishing the existence of an underpayment, the second prong of respondent's burden requires that she establish that some part of that underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes. Parks v. Commissioner, supra; Hebrank v. Commissioner, supra. Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of income or assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) an intent to mislead which may be inferred from a pattern of conduct, (9) lack of credibility of the taxpayer's testimony, (10) filing false documents, and (11) dealing in cash. See Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Webb v. Commissioner, 394 F.2d 366 (5th Cir.1968), affg. T.C. Memo. 1966-81; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. Solomon v.

<u>Commissioner</u>, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; <u>Beaver v. Commissioner</u>, 55 T.C. 85, 93 (1970). Some conduct and evidence can be classified under more than one factor. The sophistication, education, and intelligence of the taxpayer are relevant to this determination. <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992). Several of these indicia of fraud are present in this case.

<u>1. Petitioner's Sophistication and Experience.</u>

The sophistication and experience of a taxpayer are relevant in determining whether fraud exists. <u>Id.</u>; see also <u>Plunkett v. Commissioner</u>, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274; <u>Iley v. Commissioner</u>, 19 T.C. 631, 635 (1952). This includes the taxpayer's educational background. <u>Simms v. Commissioner</u>, 422 F.2d 340 (4th Cir. 1970), affg. T.C. Memo. 1968-298. Here, petitioner is an intelligent, educated man. In addition to practicing dentistry during the years at issue, petitioner was significantly involved in the real estate market, leasing and selling various properties. Moreover, the account statements for petitioner's foreign bank account indicate that he was an active investor in securities, specifically U.S. Treasury Bills. Having observed petitioner at trial and considering the record, we cannot accept his claim of naivete. It is unlikely that petitioner, as a result of his failure to report the foreign interest income, would not have realized his income tax

liabilities were consistently and substantially underreported for each year at issue.

## 2. Consistent and Substantial Understatements of Income.

Consistent and substantial understatements of income may be strong evidence of fraud. <u>Marcus v. Commissioner</u>, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. (1980). Moreover, a pattern of consistent underreporting of income, when accompanied by other circumstances indicating an intent to conceal income, justifies the inference of fraud. <u>Holland v. United States</u>, 348 U.S. 121, 137 (1954).

This case involves a 7-year period during which petitioner failed to report interest earned on his foreign bank account. Moreover, the amount of unreported income for each year at issue is substantial in comparison with the amount of gross income petitioner reported for such years. The following table illustrates the omitted interest income as a percentage of petitioner's reported gross income:

| Year | Percentage of Income |
|------|---------------------|
| 1980 | [1]9.68 |
| 1981 | 47.43 |
| 1982 | 55.38 |
| 1983 | 42.56 |
| 1984 | 29.13 |
| 1985 | 87.82 |
| 1986 | 55.06 |

[1]Petitioner also did not report a short-term capital gain of $13,117.23 in 1980. The figure in the table above does not include the omitted short-term gain.

Such failure to report substantial amounts of income over a number of years is effective evidence of fraud. <u>Marcus v.</u>

Commissioner, supra.  Petitioner's failure to report the interest income also presents a consistent pattern from which an inference of fraud may be drawn.  Holland v. United States, supra.

3. Implausible or Inconsistent Explanations of Behavior.

Implausible or inconsistent explanations of behavior may be a badge of fraud.  Bradford v. Commissioner, supra.  Petitioner testified that he did not report the interest earned on the foreign account because he believed that such income was not reportable until it was physically received, instead of merely being credited to his account.  It was because of this belief, petitioner further testified, that he did not inform his accountant about the foreign account or the interest earned thereon.  This explanation is implausible, and, in light of petitioner's sophistication, we find it to be without merit.  Furthermore, this explanation is particularly difficult to accept in light of petitioner's testimony regarding interest income that he received from domestic sources.  Although petitioner testified that he could not recall what he believed to be the proper tax treatment of domestic interest income during the years at issue, petitioner testified that he relied on his accountant to treat such interest properly when preparing his returns.  It seems inconsistent to us that petitioner would rely on his accountant to treat his domestic interest income properly while at the same time preventing his accountant from providing similar treatment to his foreign interest income.

4. Concealment of Income or Assets.

The concealment of income or assets is an indicium of fraud. Bradford v. Commissioner, supra at 307-308.  Petitioner created and maintained an interest bearing foreign bank account to which he made numerous deposits during the years at issue.  When petitioner filed his tax returns for taxable years 1980, 1981, 1982, 1983, and 1986, he concealed the existence and content of that account by leaving blank that portion of each Schedule B which specifically inquired as to the existence of such assets. Similarly, when he filed his tax returns for taxable years 1984 and 1985, petitioner concealed the existence and content of the foreign account by explicitly stating on each Schedule B that he did not maintain a foreign account during the taxable year. Through these representations, petitioner concealed the interest earned on the foreign account.  Such concealment is evidence of fraud.  Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986).

Additionally, petitioner concealed the existence of the foreign account from his accountant.  Concealment of information from an accountant is evidence of fraud.  Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986), affg. T.C. Memo. 1985-63.  Reliance upon an accountant to prepare accurate returns may negate fraudulent intent if the accountant has been supplied with all the information necessary to prepare the returns.  Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976).  This has not occurred in the instant case.

## 5. Filing False Documents.

Fraud may also be inferred when a taxpayer files false documents. Bradford v. Commissioner, supra. Petitioner's return for taxable year 1984 explicitly states that he did not maintain a foreign bank account during the taxable year. Petitioner contends, however, that it was never his intention to make such an express representation. Instead, petitioner claims that he cannot explain why his Schedule B for 1984 states that he did not maintain a foreign bank account during the taxable year. Petitioner blames his accountant for the statement on the return, contending that the accountant, or someone under his control, is responsible for making it without petitioner's authority or direction. We do not accept petitioner's argument regarding this statement on the return. Moreover, although petitioner's accountant testified that the statement in question might be the result of an error on his part, we attribute little weight to his testimony as we found it to be lacking in credibility.

## 6. Lack of Credibility of Taxpayer's Testimony.

A taxpayer's incredible testimony also supports an inference of fraud. Bradford v. Commissioner, supra. We have difficulty accepting as credible much of petitioner's testimony. For the most part, it is self-serving and implausible.

## 7. Conclusion.

Petitioner primarily argues that he misunderstood the income tax reporting requirements for foreign interest income. At issue

here, however, is not simply a case involving a taxpayer's misunderstanding of the tax law; rather, it involves a tax evasion scheme that spans a multi-year period during which petitioner consistently and substantially understated his income. Petitioner advances a dubious argument that is more likely a belated and convenient fabrication designed to facilitate his evasion scheme than a sincere claim of naivete. Coupling the consistent pattern of substantial underreporting with the previously discussed circumstances, all of which indicate an intent to conceal income, justifies the inference of fraud. Holland v. United States, 348 U.S. at 137. Accordingly, we conclude that respondent has shown, by clear and convincing evidence, that petitioner has underpaid his taxes for each taxable year at issue, except 1985 and 1986, and that some part of each underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes. See Parks v. Commissioner, 94 T.C. at 660-661. Hence, as to each taxable year at issue, except 1985 and 1986, we resolve this issue in respondent's favor. As to taxable years 1985 and 1986, we resolve this issue in favor of petitioner.

8. Other Matters

Petitioner objects to the introduction into evidence of his plea agreement, contending that it lacks relevancy and fosters a prejudicial inference. Although petitioner's conviction for willful falsification under section 7206(1) is not dispositive on

the issue of intent to evade tax, it is a fact to be considered in a trial on the merits. Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Moreover, petitioner's criminal conviction is admissible and may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To be relevant, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Although we have found that respondent failed to prove an underpayment in petitioner's income taxes for 1985 and 1986, the criminal conviction and plea agreement are of some relevance to other taxable years at issue because we have found that the petitioner's evasion scheme originated in 1980 and continued in succeeding years. See Farber v. Commissioner, 43 T.C. 407, 421 n.10 modified 44 T.C. 408 (1965); see also Petzoldt v. Commissioner, 92 T.C. 661, 701-702 (1989); McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Even excluding consideration of petitioner's plea agreement, there is ample evidence in the record to sustain respondent's determination for each year at issue, except 1985 and 1986, because respondent has established petitioner's fraudulent intent for such years by other convincing evidence.

## Issue 3.  Additions to Tax Under Section 6661.

Respondent determined that petitioner is liable for the addition to tax pursuant to section 6661 for taxable years 1982 through 1986 due to a substantial understatement of income tax for such taxable years.  This determination is benefited by a presumption of correctness.  Rule 142(a).  A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6661(b)(1).  If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable to such authority.  Sec. 6661(b)(2)(B)(i).  Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return.  Sec. 6661(b)(2)(B)(ii).

Petitioner concedes that he is not entitled to an adjustment pursuant to section 6661(b)(2)(B) for any taxable year at issue. Accordingly, if, after performing the Rule 155 computation, petitioner's understatement in tax for any year at issue is "substantial," as defined by section 6661(b)(1), then the addition to tax under section 6661 will apply to that year.

## Issue 4.  Statute of Limitations.

Respondent has established fraud against petitioner for taxable years 1980 through 1984.  Accordingly, the period of limitations for assessment and collection of the tax remains open

for such years.  Sec. 6501(c)(1).  Respondent, however, has not established fraud against petitioner with respect to taxable years 1985 or 1986.  Accordingly, because the notice of deficiency was issued on November 4, 1994, the periods of limitations for taxable years 1985 and 1986 have expired.  Sec. 6501(a).

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>